*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *RONNA LUGOSCH,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 07-105-P-H* |
| | ) | |
| *JAMES AVERY CRAFTSMAN, INC.,* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The defendant, James Avery Craftsman, Inc., moves for summary judgment in this action alleging copyright infringement in connection with two jewelry designs.[1]   I recommend that the court deny the motion.

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*,  __ F.3d __, 2008 WL 2600451 (1st Cir. July 2, 2008), at *2 (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the

---

[1] While this case involves a history of possibly related designs, only the plaintiff's "Solid Mother and Child Heart" or "Mother's Love Original" and her "Silhouette Mother and Child Heart" or  "Mother's Love Silhouette," and the defendant's "Motherhood Charm" and "Mother's Love Heart" are the subjects of the alleged infringement.

outcome of the litigation." *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni*, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial

2

or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II. Factual Background

The parties' statements of material facts submitted pursuant to this court's Local Rule 56 include the following undisputed material facts.

The defendant, James Avery Craftsman, Inc. ("JAC"), was founded in Texas over 50 years ago by James Avery. Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("Defendant's SMF") (filed with Defendant's Motion for Summary Judgment ("Motion") (Docket No. 28)) ¶ 1; Plaintiff's Response to Defendant's Statement of "Undisputed" Material Facts ("Plaintiff's Responsive SMF") (Docket No. 34) ¶ 1. The defendant has for many years been involved in the business of creating, designing, manufacturing, marketing, and selling original designs, which are used in jewelry. *Id.* ¶ 2. The defendant maintains over 1,100 designs and 14,000 separate jewelry items in its active product line. *Id.* ¶ 3. It sells its jewelry through retail stores in Texas, Georgia, Colorado, and Louisiana, mail order, and its website. *Id.* Over the years it has received copyright registrations on thousands of original designs of jewelry, many of which are or incorporate elements of the heart form. *Id.* ¶ 4. It has over 450 heart designs. *Id.* ¶ 4. It employs approximately 1,400 people. [Plaintiff's] Statement of Additional Facts in Dispute ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF beginning at 37) ¶ 24; James Avery Craftsman, Inc.'s Response to Plaintiff's "Statement of Additional Facts in Dispute" ("Defendant's Responsive SMF") (Docket No. 37) ¶ 24.

Avery first designed a 3/8" version of the JAC Heart Charm that was completed by December 9, 1971. Defendant's SMF ¶ 9; Plaintiff's Responsive SMF ¶ 9. A 13/16" version of the Heart Charm was completed by July 1, 1973. *Id.* ¶ 10. A similar design was incorporated in the Heart Dangle Ring which was created in 1974. *Id.* ¶ 11. Similarly, the design was incorporated into the Tiny Heart Ear Wires which were created and designed as early as 1975. *Id.* ¶ 13. Avery designed the Sideways '81 Heart Charm, which was completed in 1981. *Id.* ¶ 18.

4

Avery has been active in the company since its founding. *Id.* ¶ 20. He has created thousands of designs for the defendant's product line. *Id.* ¶ 22. He was assisted by Sam Chanthamaly, a technical designer employed by the defendant. *Id.* ¶ 25.

## A.  The Designs

Sometime prior to April 9, 1996, Chanthamaly received Avery's sketched design of the defendant's Mother's Love Heart design and then prepared a sculptural heart-shaped piece of silver metal. *Id.* ¶ 26.[2] The design was offered to the defendant's Design Review Committee on April 9, 1996. *Id.* ¶ 27.[3] After receiving the Committee's approval on April 29, 1996, the pin design was sent through the defendant's product development and manufacturing process. *Id.* ¶ 28. The defendant obtained a copyright registration on the Mother's Love pin design on May 19, 1997. *Id.* ¶ 30. Subsequently, the defendant designed other pieces of jewelry, which incorporated the Mother's Love Heart design, including a ring, a charm, a pendant, a Christmas ornament, and leverback earrings. *Id.* ¶ 31.

The plaintiff has been designing jewelry in Maine for over two decades. Plaintiff's SMF ¶ 1; Defendant's Responsive SMF ¶ 1. She founded her own jewelry design business in 1979 and began a jewelry wholesale and retail business in Pennsylvania. *Id.* ¶ 3. In 1983, she relocated to Maine, and, a year later, she switched the focus of her business to wholesale. *Id.* ¶ 4. In 2000, she opened a retail gallery in Round Pond, Maine. *Id.* ¶ 6. She completed her Mother's

---

[2] The plaintiff does not begin her response to this paragraph of the defendant's statement of material facts with the word "admitted," "denied," or "qualified," as required by this court's Local Rule 56(d), but rather states: "The record citation is contradicted by Mr. Avery's testimony. Mr. Avery initially testified that he had no recollection of the sketch and life cycle process of the pin through production." Plaintiff's Responsive SMF ¶ 26 (record citations omitted). A lack of memory on Avery's part is not a contradiction of the cited statement, which is completely supported by the cited affidavit of Sam Chanthamaly. Affidavit of Sam Chanthamaly (Attachment 19 to Motion) ¶¶ 2-3. It is accordingly deemed admitted. Local Rule 56(f).

[3] The plaintiff's denial of this paragraph of the defendant's statement of material facts does not address this portion of the paragraph, which is supported by the cited authority, Affidavit of James Avery (Attachment 3 to Motion) ¶ 8, and therefore is deemed admitted. Local Rule 56(f).

Love Original design in 1991. *Id.* ¶ 8. On April 1, 1991, she obtained a certificate of copyright registration for the design. *Id.* ¶ 10.

At the suggestion of customers, the plaintiff began to refine her Mother's Love Original design to make it appeal to those of diverse religious backgrounds. *Id.* ¶ 16. She obtained a copyright registration certificate on June 18, 1993 for the new version. *Id.* ¶ 18. The certificate lists the title of the work as "Mother's Love Heart" with a previous or alternative title of "Mother and Child Heart." *Id.* ¶ 19. The certificate lists the date of completion of the work as 1993. *Id.* ¶ 20. The plaintiff has used the phrase "Mother's Love" continuously in connection with these designs since 1993. *Id.* ¶ 21.

The defendant's Motherhood Charm design was offered to its Design Review Committee on April 25, 2000. Defendant's SMF ¶ 34; Plaintiff's Responsive SMF ¶ 34. After receiving the Committee's approval on September 11, 2000, the charm was sent through the defendant's product development and manufacturing process. *Id.* ¶ 35. The defendant obtained a copyright registration on the charm design on February 27, 2001. *Id.* ¶ 37.

## B. The Dispute

In June 2006, a store owner asked the plaintiff if she was licensing her design to the defendant. Plaintiff's SMF ¶¶ 98-100; Defendant's Responsive SMF ¶¶ 98-100. That month, the defendant received a letter from the plaintiff claiming that the defendant was infringing her Silhouette Mother and Child Heart design. Defendant's SMF ¶ 38; Plaintiff's Responsive SMF ¶ 38. The plaintiff demanded that the defendant no longer manufacture, sell, or promote jewelry that incorporated the defendant's Mother's Love Heart design and destroy all molds and infringing copies of such jewelry. *Id.* ¶ 39. Avery and Chanthamaly have denied copying the

plaintiff's designs or referring to the plaintiff's designs in creating the defendant's designs. *Id*. ¶ 42.

Two designs are at play in this action. The plaintiff asserts that the defendant's Mother's Love Heart design infringes her Silhouette Mother and Child Heart design (also known as "Mother's Love Silhouette") and that the defendant's Motherhood Charm design infringes her Solid Mother and Child Heart design (also known as "Mother's Love Original"). *Id*. ¶¶ 45.

The plaintiff contends that the defendant had access to her designs because she sent direct mail advertisements and communications containing the designs to the defendant. *Id*. ¶ 49. She maintained a database of customers and potential customers, and an individual who was an employee of the defendant, Dianne Poppe, was included in the database. *Id*. ¶ 50. She contends that, sometime in 1994, she sent an unsolicited "introductory letter" to Dianne Poppe at the defendant's address. *Id*. ¶ 55. Her mailings to the defendant would have started no earlier than September 13, 1994. *Id*. ¶ 58. The database indicates that the defendant was "inactive," which meant "that at a certain point [she] stopped mailing to them." *Id*. ¶ 56. Dianne Poppe's employment with the defendant ended on September 9, 1994. *Id*. ¶ 60.

The plaintiff also contends that the defendant had access to her designs because she advertised those designs in national magazines, which also mailed out postcards advertising the designs. *Id*. ¶¶ 61-62. She contends as well that the defendant had access to her designs because she used a national distributor, Stuller, to market and distribute the designs. *Id*. ¶ 66. The defendant has been a customer of Stuller since at least 1991 and receives its Findings catalog. Plaintiff's SMF ¶ 46; Defendant's Responsive SMF ¶ 46. The first time any of the plaintiff's jewelry appeared in Stuller was April 1997. Defendant's SMF ¶ 67; Plaintiff's Responsive SMF

¶ 67.  This was well after the creation and design of the defendant's Mother's Love Heart design which occurred in early 1996.  *Id*. ¶ 69.

Another way in which the plaintiff contends that the defendant had access to her designs was her attendance and display of her products at numerous industry trade shows.  *Id*. ¶ 72.  She never met anyone from the defendant at a trade show nor has she attended any trade show at which she knew the defendant was present.  *Id*. ¶ 73.  Chanthamaly has never attended a trade show.  *Id*. ¶ 74.

The plaintiff contends that the defendant also had access to her designs because the defendant filed a copyright infringement lawsuit against Rivertown Trading Company, a mail order company, which carried her Solid Mother and Child Heart design in the same catalog that carried the "knock-off" of the defendant's jewelry.  *Id*. ¶ 76.  The lawsuit was filed in November 1996.  *Id*. ¶ 81.

The plaintiff sold both of her designs here at issue, the Silhouette Mother and Child Heart and the Solid Mother and Child Heart, wholesale to more than 200 jewelry stores throughout the country, including a number in Texas.  Plaintiff's SMF ¶ 50; Defendant's Responsive SMF ¶ 50. In March 1997, three employees in separate retail stores operated by the defendant discovered advertisements in the Modern Jeweler magazine that depicted the plaintiff's designs.  *Id*. ¶ 57. Since the jewelry appeared to be somewhat similar to jewelry embodying the defendant's Mother's Love Heart design, the ad was forwarded to the defendant's corporate offices for review.  *Id*. ¶ 58.  These advertisements were sent to Gloria Cortez, an employee of the defendant who deals with copyright issues.  *Id*. ¶ 59.  Cortez concluded that the items were not similar to the defendant's designs.  *Id*. ¶ 61.  She did not consider the possibility that the defendant had infringed on the plaintiff's design.  *Id*. ¶ 64.  The defendant concluded that the

8

plaintiff's Mother's Love Silhouette design was not similar to the defendant's Mother's Love Heart pin and took no further action. *Id.* ¶ 65.

On December 6, 2006, the defendant filed a complaint against the plaintiff in the United States District Court for the Western District of Texas, seeking a declaratory judgment that it did not infringe on her copyrights. *Id.* ¶ 151. That action was dismissed for lack of personal jurisdiction over the plaintiff. *Id.* ¶ 152.

### III. Discussion

The complaint in this action alleges a single count of copyright infringement. Complaint and Demand for Jury Trial (Docket No. 1) at 8-10. The parties agree, Defendant's Motion for Summary Judgment ("Motion") (Docket No. 28) at 4; Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 33) at 3, that, in order to prevail, the plaintiff must prove ownership of a valid copyright and illicit copying of the protected work by the defendant. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). At issue in this case are the plaintiff's copyrights for the "Lugosch Mother's Love Original Design" and the "Lugosch Mother's Love Silhouette Design." Opposition at [2]. For purposes of this motion, the defendant does not challenge the plaintiff's ownership of these copyrights. Motion at 4.

The issue on summary judgment, therefore, is whether the plaintiff can prove illicit copying of her designs.[4] Proof of illicit copying is subject to a two-part test: proof that copying has in fact occurred and proof that the copying was so extensive that the copyrighted and infringing works are "substantially similar." *Yankee Candle Co. v. Bridgewater Candle Co*., 259 F.3d 25, 33 (1st Cir. 2001). The plaintiff has offered no direct evidence that the defendant copied the designs at issue. In the absence of direct evidence, she may satisfy the first part of the

---

[4] The defendant has counterclaimed for a declaratory judgment of non-infringement, Defendant's Original Answer (Docket No. 7) at 6-9, and it seeks summary judgment on that claim as well. Motion at 20.

test by showing that the defendant had access to the copyrighted work and that a sufficient degree of similarly exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying. *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005). The analysis of this degree of similarity with respect to the *first* part of the test for illicit copying, actual copying, is called "probative similarity" and, confusingly, is not the same thing as the concept of "substantial similarity" which is involved in the *second* part of the test for illicit copying. "The similarity inquiry used to indirectly establish copying is referred to as *probative* similarity and is somewhat akin to, but different than, the requirement of substantial similarity that must be shown to prove copyright infringement." *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir. 2006) (citation and internal punctuation omitted).

## A.  Illicit Copying, Part 1

The defendant separately addresses each type of evidence alleged by the plaintiff to show that it had access to her protected designs, Motion at 5-11,[5] while the plaintiff argues that this evidence should only be "considered in toto," Opposition at 10, although she cites no authority for this position.   The cited case law addresses the types of evidence individually, and I will do so as well.

The first type of evidence is direct mail, which the plaintiff sent to the defendant or to Popple who was listed on her database as an employee of the defendant.  The defendant contends that the plaintiff's evidence in this category "is nothing more than pure, unsupported

---

[5] A serious problem with the defendant's memorandum of law is that it uniformly cites not to its statement of material facts in support of factual assertions but rather directly to the documents submitted along with that statement of material facts, presumably as the source documents for the facts asserted in the statement of material facts.  Motion at 5-20.  This approach renders the statement of material facts superfluous and, if acceptable, would require the party opposing the motion not only to go to the effort of addressing each entry in the moving party's statement of material facts but then essentially to duplicate that effort in responding to the moving party's memorandum of law.  The plaintiff does not agree with any of these factual assertions in her opposing memorandum of law.  Under these circumstances, the factual assertions in the defendant's motion cannot be considered.  The defendant's reply memorandum, on the other hand, correctly cites to the statements of material facts in support of any factual assertions.

speculation." Motion at 6. The defendant asserts that the plaintiff does not remember what she sent to Popple or to the defendant, that she did not retain a copy of that material, and that she does not have any evidence that the mailings were received or seen by any of the defendant's employees. *Id*. at 6-7. It emphasizes that the plaintiff's database at some time came to list the defendant as "inactive" and that the mailings began after Popple left the defendant's employ. *Id*. at 7. It cites *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003), and *Dimmie v. Carey*, 88 F.Supp.2d 142 (S.D.N.Y. 2000), in support of this argument. *Id*. at 7-8. Those cases do support the proposition that mere receipt of an unsolicited mailing of the allegedly copied material cannot establish the access element of an infringement claim. 351 F.3d at 51-52; 88 F.Supp.2d at 146. The plaintiff responds that "[t]he fact that something is mailed creates an inference that it was received and, thus, establishes a genuine issue of material fact on the question of access." Opposition at 7. She cites *Morrissey v. Proctor & Gamble Co*., 379 F.2d 675, 677 (1st Cir. 1967), in support of this statement, and that 40-year old case does support her position. Under binding First Circuit precedent,[6] I conclude that the plaintiff has produced sufficient evidence to meet the access prong of the applicable test without consideration of the other types of evidence she proffers for this purpose.

I thus move to the second prong of the test for actual copying: whether the copyrighted designs and the challenged designs are so similar that an inference of copying may arise, so-called "probative similarity." The basis of probative similarity is "constituent elements of the [copyrighted] work that are original." *Feist*, 499 U.S. at 361. The defendant lists the following "significant" differences between each of the two sets of designs: size, width, height, orientation,

---

[6] In its reply memorandum, the defendant cites *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108 (1st Cir. 2007), for the proposition that "an opportunity to copy can occur only upon an opportunity to view the actual work." Defendant's Reply in Support of Its Motion for Summary Judgment ("Reply") (Docket No. 36) at 1-2. If that were the case, the First Circuit would have essentially overruled its opinion in *Morrissey*, which is not discussed in *Mag*. *Mag*'s holding with respect to access is not inconsistent with *Morrissey* and is not correctly stated by the defendant.

curvature, finish, and texture. Motion at 12. In response, the plaintiff relies on the testimony of her expert witness, Janel Russell. Opposition at 4-5. She cites *T-Peg* for the proposition that expert testimony "may be helpful" on this point. *Id*. at 4. The defendant ignores this portion of the opposition in its reply memorandum, presumably because it has objected to any and all uses of Russell's opinion testimony in its response to the plaintiff's statement of material facts. Defendant's Responsive SMF ¶¶ 107-30, 132-43.[7] It also responds to the plaintiff's probative similarity argument by citing the plaintiff's substantial similarity argument, an unhelpful conflating of the two separate analytical concepts. Reply at 2-3. On the showing made, with the benefit of reasonable inferences in the plaintiff's favor, the plaintiff has submitted sufficient evidence on probative similarity.

## B.  Illicit Copying, Part 2

Moving on to the second prong of the illicit copying analysis, substantial similarity, the test is whether "the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression." *Johnson*, 409 F.3d at 18. "Summary judgment on this issue is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work." *Id*. The "ordinary observer" test is usually employed in this portion of the analysis. *Id*.

---

[7] The defendant's responses to all of these paragraphs of the plaintiff's statement of material facts contain the following statement: "Although Ms. Russell has issued such opinions, this statement does not comply with Local Rule 56(c) because it is not a fact; it is Ms. Russell's subjective opinion of Plaintiff's designs. As the First Circuit has held, while expert testimony may be used to assist the trier of fact in determining probative similarity, it is not favored in determining the substantial similarity of works unless the works themselves involve highly technical or very complex matters that require the assistance of experts. *T-Peg* [], 459 F.3d [at 116]." Defendant's Responsive SMF ¶¶ 107-30, 132-43. In some of these responses, the defendant adds that Russell's opinion "purports to make a conclusion of law." *Id*. ¶¶ 107-09, 120, 123, 129, 135, 139. Russell's opinions do not state conclusions of law and will not be stricken on that basis. In addition, the plaintiff relies on Russell's opinions in connection with probative, not substantial, similarity, so the citation to *T-Peg* is not applicable at this point in the analysis. Finally, Local Rule 56(c) provides no basis for the exclusion of all expert opinion from consideration at the summary judgment stage; particularly where, as here, expert opinion evidence is a critical element of a plaintiff's case, she cannot be prevented from relying on that evidence in resisting a motion for summary judgment.

> The test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value.

*Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 62 (1st Cir. 2000) (citation omitted). The defendant contends that, before applying this test, the court must first "dissect" the allegedly infringed work "to remove those elements not protected by copyright, and then apply the merger doctrine to determine how substantially similar the copy must be to infringe." Motion at 13. It cites *Yankee Candle*, 259 F.3d at 33, in support of this assertion. *Id.*

The plaintiff does not disagree with this concept, but protests that the defendant employs the approach inappropriately, characterizing its analysis as "inappropriate, formulaic [] parsing . . . to remove all of the creative, original expression present in the Lugosch Designs[.]" Opposition at 15. The First Circuit has directed the following application of the reasonable observer test:

> We first "dissect" the work to remove those aspects not protected by copyright. [T]his Court has indicated that dissection analysis is an appropriate method of evaluating substantial similarity even when actual copying has occurred. By dissecting the accused work and identifying those features which are protected the court can also determine those aspects of the work that should be considered in the comparative analysis under the ordinary observer test. Second, we apply the doctrines of merger and scene-a-faire to determine *how* substantially similar the copy must be to infringe.
>
> There may be a qualification to the dissection test of some importance in certain cases. In *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1003 (2d Cir. 1995), the Second Circuit suggested that the dissection test may not fully resolve the legal issues where the copyright holder claims that the copyrighted material is essentially a host of uncopyrightable individual elements that have been arranged in a unique way that qualifies them for copyright protection. This Court, however, has been more enthusiastic than the Second Circuit about the use of dissection analysis to disaggregate a visual work into its component elements for the purpose of removing the unprotectible elements contained within.

*Yankee Candle*, 259 F.3d at 34 (emphasis in original; citations and internal punctuation omitted).

The defendant asserts that "the heart shape reflected in the Lugosch Designs is an uncopyrightable element of those designs, and may not be considered in the substantial similarity analysis."  Motion at 13.  The plaintiff responds, convincingly, that "what is so unique and expressive about Plaintiff's design is that the embrace of the mother and child is formed by and contained within the curves and lines of the abstract and asymmetrical heart."  Opposition at 15. If, as the defendant argues, Motion at 14, no aspect of the heart shape or the idea of a mother cradling a child is protectable, and those elements are removed from consideration of the plaintiff's claim, she does bear "the heavy burden of showing 'near identity' between the works at issue."  *Yankee Candle*, 259 F.3d at 36 (discussing application of merger doctrine).  If that were the test here, the plaintiff could not carry this burden as to her Solid Mother and Child Heart Pendant and the allegedly infringing Motherhood Charm of the defendant, *see* actual-size photographic reproduction at page 17 of Motion, but she might well be able to succeed with respect to the comparison of the plaintiff's Silhouette Mother and Child Heart design and the defendant's Mother's Love design, *see* Motion at 15.[8]  This observation is beside the point, however, because I agree with the plaintiff that the merger doctrine, which leads to the "heavy burden" recognized in *Yankee Candle*, is not appropriate for use in this case.

Use of the merger doctrine is generally reserved for ideas which admit of only a limited number of expressions.  *Yankee Candle*, 259 F.3d at 36 (quoting *Concrete Mach. Co. v. Classic*

_____

[8] In a footnote to her responsive statement of material facts, the plaintiff asserts that "because the parties' Visual Comparison do not depict actual size which tends to distort the curves of the work[, and] because JAC's brief at p. 15 compares the actual size for the JAC piece but not for the Lugosch piece[,] Plaintiff has requested and would like to present the actual physical jewelry for viewing to the Court as follows: 1) the Lugosch Mother's Love Silhouette Pendant in silver; 2) the JAC Mother's Love Pendant in silver; 3) the Lugosch Mother and Child charm in silver; and 4) the JAC Motherhood charm in silver."  Plaintiff's Responsive SMF at 1, n.1.  The plaintiff does not state the "actual size" of the Silhouette design shown on page 15 of the defendant's motion, and no prior request by the plaintiff that the court view the actual items is apparent from my review of the docket.  I conclude that a review of the actual pieces, which I understand in any event to be only four among many other sizes and forms (*e.g.*, rings, pins, charms, pendants, ornaments, and earrings) in which these designs appear, is not necessary to resolution of the issues presented by the motion for summary judgment.

*Lawn Ornaments*, 843 F.2d 600, 606 (1st Cir. 1988)).  "Even when the idea and its expression are not completely inseparable, there may still be only a limited number of ways of expressing the idea."  *Id.* (internal punctuation omitted).  "In such cases, the plaintiff has the heavy burden of showing 'near identity' between the works at issue."  *Id.*  Here, as the plaintiff points out, the evidence is that there are many ways of expressing the idea of a mother's love for a child. Plaintiff's SMF ¶¶ 143, 158-60.[9]  The *Yankee Candle* court noted that "the merger doctrine is most applicable where the idea and the expression are of items found in nature, or are found commonly in everyday life."  259 F.3d at 36.  While the heart shape -- part of the expression in this case -- is perhaps found commonly in everyday life in the United States, the idea at issue, a mother's love, cannot be characterized as an item found in nature.  None of the designs at issue in this case is intended to be a "realistic representation" of anything, unlike the items at issue in *Yankee Candle* and the cases discussed therein, 259 F.3d at 36.

The defendant's remaining arguments with respect to the ordinary observer test depend on "taking away the unprotectable elements of the Lugosch designs," Motion at 15, which, as the *Yankee Candle* court instructs, *id*. at 34, should not be indulged where the merger doctrine is not to be applied as a second step.  Accordingly, I move on to the defendant's argument that "even if [the plaintiff] could prove access and substantial similarity, a conclusion of copyright infringement can be avoided where the accused designs were independently created."  Motion at 17.  This is a legal theory available to defendants in infringement actions even when access and substantial similarity have been established.  *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996).  The problem for the defendant here is that its argument pursuant to this theory depends entirely on factual assertions that are supported only by citations

---

[9] I have already rejected the defendant's denial of and objection to paragraph 143 of the plaintiff's statement of material facts.  The defendant admits paragraphs 158-60.  Defendant's Responsive SMF ¶¶ 143, 158-60.

15

to the affidavit of James Avery.  Motion at 17-19.  Absent any citations to the defendant's statement of material facts, the court is unable to determine whether those material factual assertions are disputed by the plaintiff.  The defendant is not entitled to summary judgment on the basis of disputed material facts.  As presented, therefore, this argument does not entitle the defendant to summary judgment.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment on the plaintiff's claim and on its counterclaim be **DENIED**.  If the court adopts my recommendation, the defendant's request for an award of attorney fees, Motion at 19-20, will be moot.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of July, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge